IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Case No. 3:17–CR–164–HEH |
| | ) | |
| RODRIGO MARTINEZ-MENDOZA, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**
**(Denying Defendant's Motion to Dismiss Indictment)**

On December 19, 2017, the Grand Jury indicted Rodrigo Martinez-Mendoza ("Defendant" or "Martinez-Mendoza") for illegally reentering the United States in violation of 8 U.S.C. § 1326(a) and (b)(1). This matter comes before the Court on Defendant's Motion to Dismiss the Indictment (the "Motion," ECF No. 15), which collaterally attacks the May 6, 1997 deportation order that was entered in Defendant's absence ("Deportation Order" or the "Order"). Martinez-Mendoza argues that notice of his deportation hearing was legally insufficient. As a result, Defendant maintains that the entry of the corresponding Deportation Order was a violation of his Due Process rights.

The Court conducted an evidentiary hearing on December 6, 2018 and asked the parties to provide supplemental briefing to summarize their positions. The relevant issues have been fully briefed and the matter is ripe for review.

**I. BACKGROUND**

First, the Court will review the events that preceded the immigration court's entry of Martinez-Mendoza's Deportation Order, and then, the Court will turn to the facts

related to the Indictment.

**A. Events Leading to the 1997 Deportation Order**

Officer David Chin, an Immigration and Customs Enforcement ("ICE") deportation officer, testified during the evidentiary hearing about his direct dealings with Defendant and his knowledge of Defendant's Alien File ("A-File"). The Court admitted the Officer's testimony and portions of the A-File into evidence without objection.[1]

The evidence established that Defendant illegally entered the country in 1993 near Laredo, Texas. Federal authorities became aware of Defendant's immigration status in 1996, after he was convicted of forgery. On September 20, 1996, agents from the Immigration and Naturalization Service ("INS") interviewed Defendant. During that interview, Defendant admitted that he was a Mexican citizen and that he illegally entered the United States.

On November 10, 1996, INS agents personally served Defendant with an Order to Show Cause (the "OSC"). The OSC initiated deportation proceedings against Defendant. It also informed him that a deportation hearing would be calendared at a later time and he would receive notice of that hearing's time and location through the mail.[2] Notice of

---

[1] Evidence from Marintez-Mendoza's A-File was admitted during the hearing as Government's Exhibits 1–8.

[2] Written in Spanish and English, the OSC informed Defendant that a deportation order would be entered in his absence if he failed to appear at the deportation hearing. The OSC also informed Defendant of the available legal remedies if such an order was entered in his absence. For example, the OSC stated as follows:

> If you are ordered deported *in your absence* . . . you may file a motion to reopen at any time after the date of the order if you can show that you did not receive written notice of your hearing and you had provided your address and telephone

2

Defendant's deportation hearing would be sent to his address, which he wrote on the OSC as "13210 Chrisman, Houston, Texas 77039." INS officials also informed Defendant that he had an obligation to update his address and telephone information if either changed. Defendant signed the OCS and was released.[3]

On April 9, 1997, INS agents arrested Defendant during a worksite raid in Galveston, Texas. During an ensuing interview, Defendant admitted that he used false documentation to obtain a job at the worksite. He also told the agents that he had an immigration hearing scheduled for May 1997, and he requested to waive that hearing in order to voluntarily depart the United States for Mexico. Regarding the effect this request would have had on the May 1997 hearing, Officer Chin testified, "[the request] does not affect the hearing date . . . . Only the [Immigration] Judge can grant the voluntary removal or voluntary departure. [The Defendant] can make a note of that at the hearing to the Judge and request voluntary removal, voluntary departure." (Tr. 22–23.)

Less than one month later, Defendant failed to appear at the deportation hearing on May 6, 1997. As a result, the immigration judge entered the Deportation Order in his absence. The Order indicated that notice of the deportation hearing was sent via

---

> number (or any changes of your address or telephone number) as required . . . . If you choose to seek judicial review of a deportation order entered *in your absence*, you must file the petition for review within 60 days (30 days if you are convicted of an aggravated felony) after the date of the final order . . . .

(Gov't Ex. 1 at 4.)

[3] While Defendant's deportation hearing was pending, Defendant reported to an INS office on December 12, 1996, and again on April 4, 1997. During the April 1997 visit, INS officials told Defendant to report again on August 8, 1997; however, he failed to appear on that date.

3

"[c]ertified mail to [the] address provided by [Defendant]," however, no certified mailing return was received before the hearing. (Gov't Ex. 5.) Officer Chin testified that notice of the hearing was sent to Defendant's "13210 Chrisman" address. He also testified that the A-File did not contain a copy of the hearing notice or the corresponding certified mailing return.

The day after the deportation hearing, notice of the Deportation Order was sent to Defendant's address. It stated that the judge entered the Order "as the result of [Defendant's] failure to appear at [the] scheduled deportation hearing," and that the decision was final unless Defendant made a motion to reopen the matter. (Gov't Ex. 6.)

Several years later, on August 18, 2005, immigration authorities arrested Defendant in Petersburg, Virginia.[4] Thereafter, on September 27, 2005, Defendant was deported to Mexico. Defendant did not request any administrative relief or judicial review of the Deportation Order before he was deported.

## B. Events Leading to the Current Indictment

Defendant later reentered the United States at an unknown date and location. Thereafter, he was arrested in 2009 and charged with illegal reentry. While in custody, Defendant did not challenge the original Deportation Order. In fact, on October 23, 2009, Defendant signed a Department of Homeland Security "Notice of Intent/Decision to Reinstate Prior Order" Form, which stated "I do not wish to make a statement

---

[4] Defendant never informed INS that he had moved to Virginia despite previous instructions to update INS if his address changed.

4

contesting this determination." (Gov't Ex. 8.)

On January 29, 2010, Defendant pleaded guilty to a single count of illegal reentry,[5] and he was deported for a second time on May 3, 2010. Defendant then reentered the United States without authorization for a third time, and he was arrested again on December 5, 2017. Defendant is now before this Court, charged with illegal reentry in violation of 8 U.S.C. § 1326.[6]

## II. ANALYSIS

Subsection (d) of 8 U.S.C. § 1326 codifies a defendant's ability to collaterally attack a previous deportation order if he can meet three requirements: "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d) (2012). "These requirements are listed in the conjunctive, so a defendant must satisfy all three [] to prevail." *United States v. El Shami*, 434 F.3d 659, 663 (4th Cir. 2005) (quoting *United States v. Wilson*, 316 F.3d 506, 509 (4th Cir. 2003)). "[I]f the defendant satisfies all three requirements, the illegal reentry charge must be dismissed as a matter of law." *Id.*

---

[5] During the December 6, 2018 hearing, the government made an oral motion for the Court to take judicial notice of Defendant's 2010 conviction in this U.S. District Court. *See* Case No. 3:08-CR-380–HEH. The Court granted the government's motion.

[6] On October 11, 2018, the Circuit Court of the City of Richmond convicted Defendant of involuntary manslaughter. "[I]t [is not] necessary that the Court be requested to take judicial notice of a fact before it is authorized to do so. The Court may take judicial notice *sua sponte*." *United States v. Harris*, 331 F.2d 600, 601 (6th Cir. 1964). Accordingly, the Court also takes judicial notice of this conviction.

5

At the time of Defendant's initial deportation case, notice of a deportation hearing could be sent via certified mail. *See* 8 U.S.C § 1252b (1994) (repealed by Pub. L. 104-208, 110 Stat. 3009-615, Sept. 30, 1996).[7] Section 1252b stated in relevant part:

> [W]ritten notice shall be given in person to the alien (or, if personal service is not practicable, written notice shall be given by certified mail to the alien or to the alien's counsel of record, if any), in the order to show cause or otherwise, of—
> (i) the time and place at which the proceedings will be held, and
> (ii) the consequences under subsection (c) of this section of the failure, except under exceptional circumstances, to appear at such proceedings . . . .

8 U.S.C. § 1252b(a)(2). If a defendant did not appear at his deportation hearing, then the judge was required to enter a deportation order in absentia so long as the government proved by "clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien [was] deportable." 8 U.S.C. § 1252b(c).

In the current matter, Defendant's Motion and supplemental filings focus on two arguments, one legal and one factual. First, Defendant argues that the notice of the deportation hearing was legally insufficient based upon the absence of a certified mailing return. (Def.'s Mot. 2, 4–6, ECF No. 15; Def.'s Suppl. Br. 2–4, ECF No. 23; Def.'s Suppl. Reply 2–4, ECF No. 36.) Second, Defendant contends that he did not receive notice of the deportation hearing because he had voluntarily returned to Mexico. (Def.'s Suppl. Reply 1–2.) The Court will address each argument in turn.

---

[7] While 8 U.S.C § 1252b has been repealed, because it was the governing statute at the time, the Court nevertheless looks to its requirements to determine if the notice received by Defendant was legally sufficient.

### A. Notice of Hearing was Sufficient to Enter the 1997 Deportation Order

Defendant relies primarily on two cases: *In Matter of Huete*, 20 I. & N. Dec. 250, 253 (BIA 1991) and *United States v. El Shami*. In response, the government counters that both *cases* are easily distinguished from the current matter, rendering them inapplicable.[8] (Gov't Opp'n to Def.'s Mot. 14–15, ECF No. 16; Gov't Suppl. Mem. Opp'n to Def.'s Mot., ECF No. 17.) The Court agrees with the government.

In *Huete*, INS appealed an immigration judge's decision to dismiss a deportation case on due process grounds. *Id.* at 20 I&N Dec. at 251. The immigration judge noted that INS mailed the <u>order to show cause</u> to Huete's last known address via certified mail; however, the certified mailing return indicated that "[s]ervice [w]as unclaimed." *Id.* Apparently, Huete's last known address had been taken from an old form in his file, and Huete was never instructed to update INS if his address changed. *Id.* Thus, the evidence plausibly showed that Huete was completely unaware that a deportation proceeding had commenced against him. In disposing of the case, "[t]he immigration judge found that personal service by certified mail . . . is incomplete unless the respondent actually receives the *Order to Show Cause*, as evidenced by the signed return receipt." *Id.* (emphasis added). The Board of Immigration Appeals ("BIA") affirmed. *Id.* at 253.

As the government argues, the current matter and *Huete* are easily distinguished.

---

[8] The government also contends that the sufficiency of the notice provided is bolstered by the presumption of delivery that applies to certified mail as well as the presumption of regularity for government workers. However, given the Court's disposition of Defendant's Motion, the Court need not address the government's alternate arguments.

First, *Huete* specifically addressed an order to show cause, not the subsequent notice of Huete's deportation hearing. In addition, while service of the order to show cause in *Huete* was attempted unsuccessfully through the mail, in the current case, Defendant was personally served with the OSC by INS agents. Furthermore, there is no evidence showing that Martinez-Mendoza was not actually served, nor is such evidence required. Here, the government need only prove by "clear, unequivocal, and convincing evidence" that the written notice was sent, which it has. 8 U.S.C. § 1252b(c). Here, the immigration judge's Deportation Order definitively stated that notice of the deportation hearing was sent to Defendant's address prior to his hearing date.

Defendant contends, based on *Huete*, that the absence of a certified mailing return for the subsequent notice of hearing, not the OSC, requires this Court to dismiss the case. The government counters by relying on *Matter of Grijalva*, 21 I. & N. Dec. 27, 33 (BIA 1995). In *Grijalva*, the BIA recognized the difference between orders to show cause and subsequent hearing notices.[9] The *Grijalva* Court concluded that "proof of *actual service or receipt of the notice* by the respondent is not required" for the notice of a deportation hearings. *Id.* (emphasis added). Therefore, Defendant's argument is contrary to law. *See id.* Neither the plain language of 8 U.S.C. § 1252b nor the BIA's opinion in *Grijalva*

---

[9] "[T]he Order to Show Cause direct[s] [the alien] to provide the government with a current address to which further notices [are] sent. These include[] the Notice of Hearing, informing the alien of the time and place at which proceedings would be held." *Adeyemo v. Ashcroft*, 383 F.3d 558, 559–60 (7th Cir. 2004) (citation and footnote omitted); *see also* 8 U.S.C. § 1252b (distinguishing between orders to show cause and notices of hearing by addressing each in a different portion of the statute). Because an order to show cause initiates the deportation hearing, *see id.*, an immigration court does not obtain jurisdiction over an alien until the order to show cause is served. However, a notice of the deportation hearing is sent after proceedings have been initiated, and therefore, it does not carry the same jurisdictional effect. *Id.*

8

explicitly require a certified mailing return for the subsequent notice of a deportation hearing. Accordingly, Defendant's reliance on *Huete* is inherently flawed, and the opinion has no bearing on the outcome of the current case.

Defendant also argues that the Fourth Circuit's decision in *El Shami* is factually analogous to the current matter; and therefore, *El Shami* requires this Court to grant Defendant's Motion. In *El Shami*, an Egyptian permanent resident alien was deported after he failed to appear at his deportation hearing, which resulted in the entry of a deportation order. 434 F.3d at 661–62. After he reentered the United States, El Shami was charged with illegal reentry, and he filed a motion to dismiss that charge. *Id.* at 62. The district court denied El Shami's motion, reasoning that he failed to show actual prejudice under the third prong of § 1326(d). *Id.*

On appeal, the Fourth Circuit vacated El Shami's § 1326 conviction. *Id.* at 666. That Court found that "uncontradicted evidence in the record" showed that no notice had been sent to El Shami. *Id.* at 664. As the Fourth Circuit stated:

> Both El Shami and his wife testified that they did not receive any correspondence from the INS regarding the final deportation hearing during the period of April through October 1993. Further, during the pendency of this matter in the district court, the United States stipulated that there was no evidence in El Shami's immigration file to reflect that the INS had sent El Shami written notice of the final deportation hearing.

*Id.* In addition, El Shami did not learn of the deportation order until nine months after his hearing date, after the time to seek a review of that order had expired. *Id.* Therefore, based on the absence of any notice of the deportation hearing or the resulting deportation order, it was not possible for El Shami to seek administrative review or judicial review,

which satisfied the first and second prongs of § 1326(d). *Id.* at 664. Regarding the final prong, The Fourth Circuit reasoned that El Shami suffered prejudice because the lack of notice prevented him from seeking relief under section 212(c) of the Immigration and Naturalization Act. *Id.* at 664–66.

In the current matter, Defendant appears to overlook several key facts that distinguish his case from *El Shami*. Unlike *El Shami*, where the government stipulated that no evidence showed that a notice of hearing was sent, the evidence in this case shows that notice of Defendant's hearing *was actually* sent to his address. During the May 6, 1997 deportation hearing, the immigration judge indicated that "[n]otice of the scheduled hearing had been provided," however, a return had not been received. (Gov't Ex. 5.) In addition, INS agents who encountered Defendant in Galveston, Texas on April 9, 1997 reported that "[Defendant] has a deportation hearing scheduled for 5/97." The reasonable inference that flows from this evidence is that Defendant received the hearing notice at his address, and it informed him of the May 6, 1997 deportation hearing.

Furthermore, in *El Shami*, both the defendant and his wife testified that no notice had been received at their residence. There was no such evidence in the current matter. In fact, Defendant's previous statements to INS agents regarding a hearing in May 1997 support the conclusion that he received notice of the hearing. Therefore, Defendant's reliance on *El Shami* is unpersuasive.

Having distinguished Defendant's cases, the Court turns to the statutory factors that Defendant has the burden of satisfying under § 1326(d). The first two factors require a Defendant to (1) "exhaust[] any administrative remedies that may have been available"

against the Order and (2) that "the deportation proceedings . . . improperly deprived [him] of the opportunity for judicial review." 8 U.S.C. § 1326(d). The evidence presented shows that Defendant cannot satisfy either requirement. Here, Defendant was personally served with the OSC which was read to him in Spanish, his native language. Defendant was therefore informed that a deportation order could be entered in his absence, and he was also informed that administrative and judicial remedies were available to him if this occurred. Defendant also personally provided his address to INS—the address that INS used to send notice of Defendant's deportation hearing as well as the notice of the corresponding Deportation Order. However, Defendant took no apparent action after a copy of the Deportation Order was sent to his residence.

In addition, prior to Defendant's first § 1326 conviction, he received a form informing him that the government intended to reinstate the original Deportation Order. However, Defendant signed that form and indicated, "I [Defendant] do not wish to make a statement contesting this determination." *See United States v. Hernandez-Lopez*, 602 F. App'x 921, 921–22 (4th Cir. 2015) ("If, however, 'an alien knowingly and voluntarily waives his right to appeal an order of deportation, then his failure to exhaust administrative remedies will bar collateral attack on the order in a subsequent illegal reentry prosecution under § 1326(d).'") (quoting *United States v. Cerna*, 603 F.3d 32, 38 (2d Cir. 2010)); *see also United States v. Ortiz*, 488 F. App'x 717, 718 (4th Cir. 2012) (considering a defendant's signature on a waiver form in support of holding the defendant did not exhaust his available remedies).

11

Consequently, the Court finds that Defendant has failed to satisfy the first two prongs of § 1326(d). In addition, because the statute's requirements are conjunctive, it is unnecessary for the Court to address whether Defendant can show actual prejudice. *See id.*

**B. Defendant's Alternative Factual Argument Lacks Merit**

Finally, Defendant makes an alternate factual argument that he was absent from the May 6, 1997 deportation hearing because he had returned to Mexico. He contends that "[b]ecause [he] had been encountered by INS officers and VR'd to Mexico a month before his immigration court hearing, it is unsurprising that he did not show up. But it is troubling that immigration officers did not inform the immigration judge about what they had done." (Def.'s Suppl. Br. Mot. to Dismiss 7, ECF No. 23.)

Thus, according to Defendant's version of events, he was confronted by federal agents in April 1997, and he told them that he would depart the United States, rather than attend his deportation hearing. The federal agents then decided to take Defendant at his word, but they forgot to inform the judge of their unilateral decision to permit Defendant to leave the country despite his pending deportation hearing. Needless to say, there are multiple problems with this theory.

First, there is insufficient evidence to support Defendant's version of events. The only evidence that supports Defendant's position is a single notation in the A-File that reads, "VR," which appears on the I-213 form that was completed on April 9, 1997. (Gov't Ex. 4.) Second, while it is certainly conceivable that the letters "VR" could be interpreted as meaning "voluntary return" or "voluntary removal," the Court need not

make such a determination. Rather, the Court is persuaded by Officer Chin's credible testimony that this procedure was not available to Defendant. He testified that "[o]nly the Judge can grant the voluntary removal or departure" when a hearing is pending. Here, a legal proceeding had already commenced against Defendant via service of the OSC, and therefore, Defendant could not be voluntarily removed of his own accord. Simply put, the federal court system does not permit defendants to "opt out" or leave the country at their discretion to avoid legal jeopardy.

Finally, Defendant's alternate factual argument makes no logical sense. Even if the Court credited Defendant's argument—which it does not based upon countervailing evidence—Defendant was nevertheless required to update INS regarding changes to his address, which he did not do. *See* 8 U.S.C. §§ 1252b(a)(1)(F), (a)(2)(B). Therefore, the Deportation Order would nevertheless be valid even if Defendant was in Mexico, or any other state in the Union, when the Order was entered. *See id.* at (c)(2).

### III. CONCLUSION

For all these reasons, the Court finds that Defendant has failed to meet his burden under § 1326(d). Defendant's Motion will be denied, and an appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: March 20, 2019
Richmond, Virginia

13